NOT DESIGNATED FOR PUBLICATION

No. 117,384

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEVEN KESTERSON,
*Appellant*,

v.

RAY ROBERTS,
SECRETARY OF CORRECTIONS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed November 9, 2017. Affirmed.

*Michael G. Highland*, of Bonner Springs, for appellant.

*Thomas E. Nanney*, assistant attorney general, and *Derek Schmidt,* attorney general, for appellee.

Before MALONE, P.J., LEBEN, J., and KEVIN P. MORIARTY, District Judge, assigned.

LEBEN, J.: Steven Kesterson, an inmate at Lansing Correctional Facility, appeals the district court's dismissal of his habeas corpus petition. In it, Kesterson claimed he had been unlawfully denied parole by the Prisoner Review Board. The district court dismissed his complaint because the suit was filed outside the statutory time limit to bring such actions, and even if it was timely, the decision to deny parole was not arbitrary or capricious. We agree and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 1987, Kesterson was convicted of a host of crimes in Harvey County, Kansas. The crimes—divided over three separate cases—were aggravated burglary (three times), aggravated sexual battery, aggravated assault (four times), aggravated sodomy (twice), rape, and attempted rape. The district court ordered some of these sentences to run concurrently and others to run consecutively, providing an overall prison sentence of 35 years to life. About one month later, Kesterson pled guilty to another crime—aggravated escape—and was sentenced to another 1 to 5 years. That sentence was ordered to run concurrently with his prior sentence, so the overall prison sentence remained an indeterminate sentence of 35 years to life.

Kesterson appeared before the Prisoner Review Board in July 2015 for a parole evaluation. On August 10, the Board notified Kesterson that he had been denied parole due to the "[s]erious nature/circumstances" of his crime, his "[h]istory of criminal activities," and "[o]bjections." On September 1, 2015, Kesterson mailed a request for reconsideration of this decision as allowed by an administrative regulation, K.A.R. 45-200-2(b). The Board again denied his request because Kesterson did not present "new information" as required under the regulation. Kesterson received notice of this decision on September 21, 2015.

Eight days later, Kesterson filed a grievance with his unit team leader at his correctional facility, complaining of the Prisoner Review Board's decision to deny him parole. But this grievance was denied by the warden on the ground that he could not overturn a decision of the Prisoner Review Board.

Kesterson's grievance was denied on October 6. He then filed his petition for writ of habeas corpus with the district court on October 8.

In court, Kesterson argued that the Board's decision to deny him parole had been arbitrary and capricious. The Prisoner Review Board answered that the decision was not arbitrary and capricious and that Kesterson's writ was out of time, having been filed outside the 30-day window provided by statute, K.S.A. 2016 Supp. 60-1501(b). Kesterson responded that the request for reconsideration and grievance each tolled this statutory time limit.

The district court denied relief, saying Kesterson had "not presented sufficient evidence that the Kansas Prisoner Review Board failed to adhere to applicable statutes and [had] failed to demonstrate intolerable conduct or continuing mistreatment." In a written order, the court also found that he had filed the habeas claim too late.

Kesterson then appealed to our court.

ANALYSIS

We begin with the most basic issue in this appeal: Was it brought within the time limit established by the Kansas Legislature? A statute, K.S.A. 2016 Supp. 60-1501(b), requires that an inmate wanting to file a habeas petition challenging some action taken against him or her do so "within 30 days from the date the action was final." But this deadline "is extended during the pendency of the inmate's timely attempts to exhaust such inmate's administrative remedies." K.S.A. 2016 Supp. 60-1501(b). By providing a 30-day limit and then saying the deadline "is extended" while the inmate is making timely efforts to exhaust whatever administrative remedies are available, the statute sets up a time clock that begins to run when the agency takes the last step it's required to take to act. The clock then stops running while the inmate makes any further attempt to seek an administrative remedy.

3

More specific to this case, when the Prisoner Review Board denies parole, the Board must provide a written statement to the inmate as to the reasons for denying parole. K.S.A. 2016 Supp. 22-3717(j)(1). That decision starts the 30-day time limit for filing a court action to challenge the decision. See *Battrick v. State*, 267 Kan. 389, Syl., 985 P.2d 707 (1999). The inmate has an option at that point rather than going straight to court: The inmate can ask the Board to reconsider its decision. But the Board will grant that request only if there is "new information that was unavailable at the prior hearing." K.A.R. 45-200-2(b); see also *Wheeler v. Feleciano*, No. 100,478, 2008 WL 5401493, at *3 (Kan. App. 2008) (unpublished opinion) (explaining that a timely request to reconsider a parole decision tolls the time limit for a habeas claim).

Kesterson asked the Board to reconsider its decision in his case 22 days after he was notified that he had been denied parole. At that point, 22 of the 30 days had run. We'll assume for the purpose of this decision that the clock doesn't begin to run again until the inmate receives notice of the denial of a motion to reconsider; Kesterson received that notice here on September 21, 2015. Eight days later Kesterson filed a grievance with the Department of Corrections (under the procedure outlined in K.A.R. 44-15-101a). The warden denied the grievance on October 6, and Kesterson filed his habeas petition in court on October 8.

Both parties agree that Kesterson's initial request to the Board for reconsideration stopped the clock. But it would have started to run again when Kesterson received the Board's denial of his request on September 21. If the clock continued to run from then until he filed his habeas petition on October 8, the 17 days reflecting that time period added to the 22 days that ran from August 10 (the Board's original decision) to September 1 (when Kesterson filed for reconsideration) would total 39 days, making his court petition 9 days too late.

4

Kesterson argues that the time from when he filed his grievance on September 29 to October 8 when he says he received notice of the denial shouldn't count, either. And if the time from September 29 to October 8, totaling 10 days, is excluded, then only 29 days would count against the 30-day time limit and Kesterson's court petition would be timely.

So the timeliness of Kesterson's habeas claim in the district court depends upon whether the 30-day clock stops running when an inmate files a prison grievance about a Prisoner Review Board decision. The State argues that the only further administrative review possible for a Prisoner Review Board decision is a motion to that Board for reconsideration and that an inmate grievance filed with prison staff doesn't toll the deadline. We agree.

The grievance procedure, authorized under an administrative regulation, K.A.R. 44-15-101a, says that the grievance procedure is "applicable to a broad range of matters that directly affect the inmate." K.A.R. 44-15-101a(d)(1). It then gives two categories of issues that can be addressed by a grievance: (1) "Complaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections"; and (2) "[A]ctions by employees and inmates, and incidents occurring within the facility." K.A.R. 44-15-101a(d)(1).

In sum, the grievance procedure is intended to address complaints about living conditions or policies within the prison. E.g., *Sperry v. McKune*, 305 Kan. 469, 384 P.3d 1003 (2016) (addressing exposure to asbestos at the prison); *Lynn v. Simmons*, 32 Kan. App. 2d 974, 95 P.3d 99 (2003) (challenging an inmate's alleged transfer in retaliation for offering legal assistance to other inmates); *Davis v. Roberts*, No. 115,016, 2016 WL 6822667 (Kan. App. 2016) (unpublished opinion) (challenging forcing an inmate to participate in a head count while using the toilet). To be sure, decisions of the Prisoner Review Board are not specifically excluded from the regulation, but they do not naturally

5

fit within the categories of the regulation—policies and conditions of the prison itself or actions taken within the prison.

Kesterson might have an argument—one he did not make on appeal—that the text of the regulation allows for a Prisoner Review Board decision to be reviewed through a grievance. The grievance procedure can go as high as the Secretary of Corrections, K.A.R. 44-15-101(d)(3), though our record only shows that Kesterson took his grievance to the prison warden. Since parole decisions are now made by a Prisoner Review Board within the Department of Corrections (rather than the former, independent body, the Kansas Parole Board), one might argue that the Secretary has some authority to reverse a Board decision. See Executive Reorganization Order No. 34, Sec. 3 (2011). But that does not seem to be the purpose of the grievance procedure, is not an argument Kesterson has made, and thus is not something we need to resolve to decide this appeal.

Kesterson pursued his grievance only to the level of the prison warden, who denied relief because he had no authority to review the Board's decision. The warden correctly held that he lacked such authority, and Kesterson went no further. Because the administrative process he chose had no ability to change the Board's decision, the 30-day time clock did not stop while Kesterson pursued the unnecessary process of filing this administrative grievance. So the only tolling of the 30-day period that took place was from September 1 to 21, the 20-day period it took for the Board to act on his request for reconsideration. With only 20 days tolled between August 10 and October 8, 39 days had run before Kesterson filed his court case. That exceeded the 30-day limit, leaving the court unable to consider his claim.

Even if he had filed the court claim on time, however, he would not have won on the merits. Appellate review of the denial of parole is limited to whether the Prisoner Review Board complied with applicable statutes and whether its action was arbitrary and capricious. *Torrence v. Kansas Parole Board*, 21 Kan. App. 2d 457, 458, 904 P.2d 581 (1995). An action is only arbitrary or capricious if it is so unreasonable that no reasonable

6

person would agree with it or if it lacks any factual basis. See *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger*, 276 Kan. 232, 275, 75 P.3d 226 (2003).

The Board denied Kesterson parole because of the "[s]erious nature/circumstances" of his crime, his "[h]istory of criminal activities," and "[o]bjections." Kesterson argues the reasons he was denied parole are arbitrary because they are "immutable facts not subject to change or improvement."

He's right, of course, that some of the things cited—like the serious nature of his crimes—can't be changed at this point. But that doesn't mean the Board can't or shouldn't consider them. In fact, Kansas law requires it to do so. In the applicable statute, K.S.A. 2016 Supp. 22-3717(h)(2), set out below, we've italicized the requirement that the Board consider the immutable factors it cited regarding Kesterson—the serious nature of his crimes and his history of criminal activities:

> "At each parole hearing . . . the board shall consider: . . . all pertinent information regarding such inmate, including, but not limited to*, the circumstances of the offense of the inmate*; the presentence report; *the previous social history and criminal record of the inmate*; the conduct, employment, and attitude of the inmate in prison; the reports of such physical and mental examinations as have been made, including, but not limited to, risk factors revealed by any risk assessment of the inmate; comments of the victim and the victim's family including in person comments, contemporaneous comments and prerecorded comments made by any technological means; comments of the public; official comments; any recommendation by the staff of the facility where the inmate is incarcerated; proportionality of the time the inmate has served to the sentence a person would receive under the Kansas sentencing guidelines for the conduct that resulted in the inmate's incarceration; and capacity of state correctional institutions." (Emphasis added.) K.S.A. 2016 Supp. 22-3717(h)(2).

Parole in Kansas is a privilege, not a right. *Gilmore v. Kansas Parole Board*, 243 Kan. 173, 180, 756 P.2d 410 (1988). And the Prisoner Review Board must consider these

7

statutory factors, including immutable factors like "the circumstances of the offense." The Board then weighs the factors and determines whether to grant parole. In a given case, a single immutable factor may be a sufficient basis for denying parole. *Cook v. Riggin*, No. 109,920, 2014 WL 2403131, at *2 (Kan. App. 2014) (unpublished opinion). It's the Board's job, not ours, to weigh these factors; so as long as the Board does not make its decision for a reason outside of the statutory bounds, its decision ordinarily cannot be overturned as having been arbitrarily or unreasonably made. *Torrence*, 21 Kan. App. 2d at 458.

We have upheld the denial of parole in cases quite similar to Kesterson's. See *Tackett v. Pryor*, No. 112,850, 2015 WL 5311280, at *2 (Kan. App. 2015) (unpublished opinion) (holding the Board was not arbitrary or capricious when it denied parole due to the circumstances of the crime, the inmate's criminal history, and objections from the public); *Galloway v. Kansas Parole Board*, No. 110,637, 2014 WL 2229548, at *2 (Kan. App. 2014) (unpublished opinion) (finding the Board was not arbitrary or capricious when it denied parole due to the serious nature and circumstances of his crime, his criminal history, and the violent nature of his crime); *Morris v. Kansas Dept. of Corrections*, No. 107,068, 2012 WL 3630283, at *3 (Kan. App. 2012) (unpublished opinion) (explaining that the Board's decision for denial of parole was not arbitrary and capricious because its reasoning was "sufficiently similar" to the wording of K.S.A. 2010 Supp. 22-3717). Even if Kesterson's court case had been timely filed, we would find that the Board's decision to deny Kesterson parole was not arbitrary or otherwise unreasonable—its decision was based on the factors the statute required it to consider.

We affirm the district court's judgment.